OPINION OF THE COURT
 

 Kaye, J.
 

 Can an arbitrator who concludes that a collective bargaining agreement has been violated by a school district’s involuntary reassignment of two teachers, order that the violation be remedied by requiring the district to offer the teachers their original positions? In the circumstances presented, we conclude that the arbitrator had the authority to order that relief.
 

 Eileen Weber and Cheryl Gallagher hold appointments in the special education tenure area, and are certified to teach any special education class in the State. During the 1986-1987
 
 *36
 
 school year, Weber taught one section of primary language at the LaGrange Elementary School, in the Arlington Central School District; her students were at kindergarten and first grade level. During that same year, Gallagher taught one section of elementary language at LaGrange; her students were at the first and second grade level.
 

 For the 1987-1988 school year — the year in issue — Weber was assigned to teach Level II language, which meant that she was teaching second and third grade level students. Gallagher was assigned to teach intermediate skills development; her pupils were at the third and fourth grade level, and the emphasis was on skills, rather than language, development. Both assignments required new classroom preparation.
 

 The Teachers Association viewed these assignments as violative of the collective bargaining agreement, particularly article VIII, section K, which "recognized that some involuntary transfers of teachers from one building to another or reassignment within a tenure area may be unavoidable,” but stated that such actions "should be held to a minimum.” The section required that notice of involuntary transfers be given "as soon as practicable,” and that the district make good-faith efforts to find volunteers before involuntary reassignments. The Association contended that the transfers of Weber and Gallagher violated this provision because they were not unavoidable.
 

 A grievance filed on behalf of the teachers was submitted to arbitration. After hearing the parties, the arbitrator concluded that there was a sufficient difference between the teachers’ duties for the 1986-1987 school year and their duties for the 1987-1988 school year to conclude that they had been reassigned in violation of the agreement, and he awarded the remedy sought by the Association: that the district offer the teachers the positions they had held during 1986-1987, provided those positions still existed during the 1988-1989 school year.
 

 In seeking to vacate the arbitrator’s award the district contended that the arbitrator had exceeded his power because the remedy he awarded contravened the nondelegable duty of the board of education and the superintendent of schools to assess qualifications and assign teachers to positions within their tenure area. Supreme Court agreed that the award was beyond the arbitrator’s authority, and the Appellate Division affirmed. The Appellate Division held that Education Law § 1711 (6), enacted in response to
 
 Matter of Sweet Home Cent.
 
 
 *37
 

 School Dist. v Sweet Home Educ. Assn.
 
 (58 NY2d 912), allowed a school
 
 superintendent’s
 
 authority with respect to transfer decisions to be modified by a collective bargaining agreement, but that the statute was not intended to affect the
 
 school district’s
 
 power to transfer and reassign teachers. We granted leave, and now reverse.
 

 We begin by emphasizing that the issue before us is a narrow one — whether the arbitrator had the power in the circumstances presented to order the reassignment. The district does not contest the finding of violation, or the validity of the collective bargaining agreement. Moreover, this case does not involve any attempt by the arbitrator to place unqualified individuals in teaching positions, or to create new positions. Weber and Gallagher are certified to teach any special education class and had previously held the positions to which the arbitrator returned them; and the arbitrator expressly conditioned his reassignment on the existence of the positions during the 1988-1989 school year.
 

 An arbitration award may not be vacated unless it violates a strong public policy, is irrational, or clearly exceeds a specifically enumerated limitation on the arbitrator’s power (CPLR 7511 [b] [1];
 
 Matter of Town of Callicoon [Civil Serv. Employees Assn.],
 
 70 NY2d 907, 909). The district contends that the award here violates a strong public policy giving the board of education nondelegable authority to determine teachers’ qualifications and assignments. We disagree.
 

 Prior to 1983, several decisions of this Court made clear that school boards would not be permitted to surrender through collective bargaining their responsibilities for maintaining adequate classroom standards
 
 (Honeoye Falls-Lima Cent. School Dist. v Honeoye Falls-Lima Educ. Assn.,
 
 49 NY2d 732, 734;
 
 Matter of Candor Cent. School Dist. [Candor Teachers Assn.],
 
 42 NY2d 266, 271;
 
 Matter of Cohoes City School Dist. v Cohoes Teachers Assn.,
 
 40 NY2d 774, 777-778). In 1983, in
 
 Matter of Sweet Home Cent. School Dist. v Sweet Home Educ. Assn.
 
 (58 NY2d 912,
 
 affg on opn at
 
 90 AD2d 683,
 
 supra),
 
 we held that an arbitration award allowing an involuntarily transferred teacher to resume his previous position exceeded the arbitrator’s power because Education Law § 1711 (5) (e) imposed upon the school superintendent, subject to the approval of the board of education, nondelegable authority to assign and reassign teachers in order to maintain adequate classroom standards.
 

 
 *38
 
 The Legislature responded to
 
 Sweet Home
 
 by enacting Laws of 1986 (ch 843). That legislation modified Education Law § 1711 (5) (e) — setting forth the power of a superintendent of schools in a union free school district to transfer teachers subject to the board’s approval — by adding a new subdivision (6), as follows: "Notwithstanding any inconsistent provision of law, the provisions of paragraph e of subdivision five of this section relating to the transfer of teachers may be modified by an agreement that is collectively negotiated pursuant to the provisions of article fourteen of the civil service law.” The powers of superintendents in city school districts were similarly modified (Education Law § 2508 [7]; § 2566 [9]).
 

 The new enactment established that it was public policy to permit collective bargaining concerning a school superintendent’s power to transfer teachers (L 1986, ch 843, § 1). The amendment "does not alter the rule that there are certain powers of the school boards which remain nondelegable and nonnegotiable * * * it merely provides that the right to transfer teachers is not among those nondelegable powers”
 
 (Matter of Three Vil. Teachers’ Assn. v Three Vil. Cent. School Dist.,
 
 128 AD2d 626, 627). Because of the amendment, the question whether the arbitrator’s award in this case was against public policy does not turn on the distinction between substantive and procedural limitations on the power to transfer teachers set forth in
 
 Sweet Home,
 
 which held that "procedural rules regulating the right to reassign teachers,” unlike the power to reassign, could be a subject of collective bargaining (90 AD2d, at 684). Instead, it turns on the legislative intent behind the amendment.
 

 The school district contends, and the Appellate Division agreed, that section 1711 (6) affects only the superintendent’s power to transfer teachers, but leaves the board’s power intact. In our view, the 1986 amendment was not so limited.
 

 The superintendent of schools is the bargaining agent for a school district (Civil Service Law § 201 [10], [12]). By providing that the superintendent’s power to transfer teachers could be modified by agreement, the Legislature explicitly authorized superintendents to enter into collective bargaining agreements containing limitations upon their transfer power. Under the district’s view, those limitations could be enforced only against the superintendent. Thus, if the district chose to transfer teachers in violation of bargained-for limitations, there would be no remedy.
 

 
 *39
 
 We cannot agree that the Legislature authorized collective bargaining concerning the transfer power in such a way that the resulting agreement could be enforced only against the bargaining agent and not against the district itself. As the Sponsor noted, the purpose of the bill was "to permit collective bargaining with respect to teacher assignments within a school district. Current law delegates this authority to the superintendent of the district * * *. This bill would establish the assignment and reassignment of teachers as a negotiable term and condition of employment” (Letter of Arthur J. Kremer to Evan A. Davis, July 15, 1986, Bill Jacket, L 1986, ch 843).
 

 The district argues that if the Legislature had intended to affect the power of boards of education it would have amended provisions of the Education Law dealing with the board’s powers, such as Education Law § 1709 (13), (16) and (33), and not simply the provisions dealing with superintendents. However, none of the subdivisions of section 1709 to which the district refers state that the board has power to transfer teachers. Section 1711 (5) (e), by contrast, states that the superintendent has power to transfer teachers "and to report immediately such transfers to such board for its consideration and actions.” Section 1711 (5) (e) is thus an explicit grant of power to the school board to review the superintendent’s transfer decisions. By the same token, section 1711 (6), which provides that the superintendent’s transfer power may be modified by a collective bargaining agreement, has the same effect on the board’s powers.
 

 The district notes that a memorandum in support of the legislation prepared by its Sponsor stated that the bill would declare it to be public policy "to allow
 
 public employers
 
 to enter into voluntary agreements” concerning teacher transfers (emphasis supplied), and contrasts this with the statement of purpose contained in the bill as enacted, which referred to "the powers and duties of
 
 superintendents of schools”
 
 (L 1986, ch 843, § 1; emphasis supplied). It argues that the emphasized change in wording means that the Legislature rejected a proposal that would have permitted public employers — i.e., school boards — to bargain away the power to transfer, and instead adopted a more limited provision permitting only superintendents to do so.
 

 This contention is unpersuasive. The Sponsor’s memorandum summarizing the bill states that it "amends the educa
 
 *40
 
 tian law to permit school superintendents and collective bargaining agents to collectively negotiate provisions regarding the transfer of teachers within a school district” (Mem in support of Assembly Bill 8042, Assemblyman Arthur J. Kremer, Bill Jacket, L 1986, ch 843). Clearly the Sponsor believed that amending the superintendent’s power to transfer teachers would achieve the purpose stated later in the same memorandum — "to allow public employers to enter into voluntary agreements” concerning teacher transfers. Thus, far from supporting the district’s contention, the Sponsor’s memorandum tends to refute it. Any doubt on this score would be further overcome by the many communications in the Bill Jacket from school superintendents and school board members urging the Governor to veto the legislation; those letters demonstrate acute awareness that passage of the law would diminish the public employer’s authority with respect to teacher transfers.
 

 Nor does the memorandum of the Office of Employee Relations establish that the Governor approved the bill because he thought that it would only affect "procedural aspects of a teacher transfer.” As is plain from the face of the document, the memorandum was the agency’s response to proposed legislation, not the Governor’s message; the agency was concerned with the question whether the legislation could be interpreted to require negotiations concerning the superintendent’s power to transfer, a question not present here.
 

 We conclude that by adding section 1711 (6), the Legislature intended to overturn the
 
 Sweet Home
 
 holding that the authority to transfer teachers could not be limited through collective bargaining. To give effect to that amendment, it should be read to permit collective bargaining concerning the power of the board of education to transfer teachers, not simply the power of the superintendent to do so. Therefore, once the arbitrator determined that the involuntary transfer provisions of the collective bargaining agreement had been violated, it was within his power to order the teachers reassigned as he did, and that remedy did not usurp a nondelegable power of the board of education.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the arbitration award confirmed.
 

 Chief Judge Wachtler and Judges Simons, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
 

 Order reversed, etc.