■ In the Matter of BOARD OF EDUCATION OF PORT JEFFERSON UNION FREE SCHOOL DISTRICT, Respondent, v PORT JEFFERSON TEACHERS' ASSOCIATION, Appellant. [663 NYS2d 69] —In a proceeding pursuant to CPLR article 75 to permanently stay arbitration, the Port Jefferson Teachers' Association appeals from an order of the Supreme Court, Suffolk County (D'Emilio,

J.), entered November 2, 1995, which granted the petition. Justice Ritter has been substituted for the late Justice Hart (*see*, 22 NYCRR 670.1 [c]).

Ordered that the order is affirmed, with costs.

The petitioner Board of Education of the Port Jefferson Union Free School District (hereinafter the Board), commenced this proceeding to stay the arbitration demanded by the Port Jefferson Teachers' Association (hereinafter the Teachers' Association), on behalf of one of its members. The Teachers' Association alleged, *inter alia*, that the Board's determination denying the application of Nick Gordon, a high school physical education teacher, to be appointed to the extracurricular position of assistant varsity football coach, violated various provisions of the collective bargaining agreement between it and the Port Jefferson Union Free School District. The Board concluded that its determination denying Mr. Gordon's request for a coaching appointment was not an arbitrable matter within the meaning of the collective bargaining agreement. The Supreme Court agreed and stayed the arbitration. We now affirm.

An "agreement to arbitrate must be express, direct and unequivocal as to the issues or disputes to be submitted to arbitration; anything less will lead to a denial of arbitration" (*Matter of Acting Superintendent of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.]*, 42 NY2d 509, 511; *Matter of South Colonie Cent. School Dist. [South Colonie Teachers Assn.]*, 46 NY2d 521, 526). Contrary to the Teachers' Association's contentions, appointment of varsity coaches, or of any other teachers to oversee extracurricular activities, is not a matter expressly and unequivocally encompassed by the arbitration provisions of the collective bargaining agreement. Therefore, the Board's decision not to appoint Mr. Gordon to a coaching position does not constitute a "grievance" which must be submitted to arbitration (*see*, *Matter of Acting Superintendent of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.]*, *supra*, at 513; *Matter of Board of Educ. v Levittown United Teachers*, 213 AD2d 481).

Contrary to the conclusion of our dissenting colleague, nowhere in the collective bargaining agreement is there any express authority to construe the agreement as requiring arbitration of decisions denying appointments to coaching positions. Indeed, unlike the situation presented by *Matter of Riverhead Cent. School Dist. v Riverhead Cent. Faculty Assn.* (140 AD2d 526), where a coaching determination was challenged under a collective bargaining agreement provision authorizing arbitration of grievances over deprivations of "professional ad-

vantage[s] without just cause", there is no similar provision in the instant collective bargaining agreement. Moreover, while the collective bargaining agreement does recognize the importance of extracurricular activities, provides for extra compensation to teachers who devote their time to such activities, and presumably protects teachers from arbitrary dismissals from their extracurricular appointments, there is nothing within the collective bargaining agreement that can reasonably be construed to provide for arbitration of decisions denying appointment of a teacher to an extracurricular assignment. Therefore, we agree that this controversy is not subject to arbitration.

Furthermore, even if the instant controversy were arbitrable, the Teachers' Association could not compel the appointment of Mr. Gordon to a coaching position. Public policy considerations preclude an arbitrator from directing that an individual be appointed to a coaching position, as "[t]he authority to assess the qualifications of teachers for appointment to varsity coaching positions is a nondelegable responsibility of the Board of Education" (*Matter of Riverhead Cent. School Dist. v Riverhead Cent. Faculty Assn., supra*, at 528).

The dissent acknowledges the existence of this rule which prohibits an arbitrator from filling a coaching position over the objections of the Board. The dissent further reasons, however, that there are allegations that school authorities violated procedural provisions of the collective bargaining agreement in reaching their decision not to appoint Mr. Gordon to a coaching position, and that such procedural violations constitute grievances which are arbitrable. The dissent bases this conclusion upon an unsupportable premise.

Assuming that the collective bargaining agreement did apply to decisions denying extracurricular appointments, the dissent's procedural conclusion would be correct. An alleged violation which "concerns the procedural steps preliminary to the final decision regarding an appointment, is the proper subject of arbitration" (*Matter of Riverhead Cent. School Dist. v Riverhead Cent. Faculty Assn., supra*, at 527). However, as previously demonstrated, the collective bargaining agreement does not compel arbitration of a decision denying an appointment to a coaching position. Assuming that such controversies were covered by the collective bargaining agreement, we would still find a stay of arbitration to be warranted insofar as none of the procedural provisions within the collective bargaining agreement cited by the Teachers' Association are applicable to selection of coaches.

For example, the Teachers' Association cites a provision concerning "selection of new teachers", which provides only that the superintendent may solicit opinions of teachers on the hiring of applicants for teaching positions, "when convenient", and a provision dealing with teacher evaluations to "develop reliable and significant criteria for the evaluation of effective teaching performance". Clearly, even if the denial of Mr. Gordon's application was in retribution for his union activism, as the Teachers' Association contends, the above-cited provisions have no relevance to the denial of his coaching application. This was not an evaluation of his performance as a teacher.

Finally, while an arbitrator theoretically could determine that Mr. Gordon was being penalized for his past union outspokenness and that this constituted a violation of his contractually-guaranteed right to free expression, no legitimate purpose would be served by permitting arbitration of any alleged procedural issues. The only remedy he seeks is appointment to a coaching position with its incumbent additional compensation, and such relief is clearly beyond the authority of an arbitrator. Thus, the arbitrator could not afford Mr. Gordon the only item of relief requested. Accordingly, the court providently exercised its discretion by granting the petition to permanently stay the arbitration. Miller, J. P., Altman and Goldstein, JJ., concur.

Ritter, J., dissents and votes to reverse the order appealed from, to deny the petition, and to direct the parties to proceed to arbitration, with the following memorandum: Because I believe that an issue dispositive to this appeal is one that must be referred to the arbitrator, I respectfully dissent.

In April of 1994, Nick Gordon, a member of the Teachers' Association, submitted his name for consideration for a position as an assistant varsity football coach for the 1994-1995 school year. Mr. Gordon was not hired for the position. In September of 1994, the Teachers' Association filed a grievance on Mr. Gordon's behalf with the Board. The Teachers' Association asserted that the Board, in denying Mr. Gordon's application, had violated the terms and conditions of a collective bargaining agreement (hereinafter the agreement) between the parties. The agreement, *inter alia,* set forth various procedures to be followed in the hiring of teachers. The Teachers' Association alleged, *inter alia,* that the Board failed to solicit and consider the reactions of other teachers to Mr. Gordon's application, failed to evaluate Mr. Gordon's application in an open and recorded manner with his full knowledge and awareness, and impermissibly denied Mr. Gordon the coaching position as

punishment for his having exercised his right of free expression. After exhausting various levels of administrative review, the Teachers' Association, on behalf of Mr. Gordon, demanded arbitration pursuant to the terms of the agreement. The Board contended, *inter alia*, that the agreement did not control the selection of football coaches, and moved for a permanent stay of arbitration. I would deny such a stay.

The arbitration provision at issue provides for arbitration of "a complaint by a teacher of the Port Jefferson Schools of an alleged violation of any of the terms and conditions of this agreement". Thus, here, the allegations that the Board violated various terms and conditions of the agreement fall "clearly and unequivocally within the class of claims agreed to be referred to arbitration" (*Matter of Acting Superintendent of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.]*, 42 NY2d 509, 515; *see also, Matter of South Colonie Cent. School Dist. [South Colonie Teachers Assn.]*, 46 NY2d 521). Accordingly, a dispositive issue becomes whether the selection of teachers for coaching positions must be made pursuant to the terms and conditions of the agreement. In the preamble to the agreement, "teacher" is defined as "any member of the bargaining unit represented by the [Teachers' Association]". Article I of the agreement provides that the bargaining unit was composed of, *inter alia*, "all professional, certificated personnel, summer school teachers and nurses". Article IX (A) (13) of the agreement, after noting that extracurricular activities are a "necessary part of the total education program offered by the District", states: "[b]ecause of their extensive nature, extracurricular activities have necessitated the assignment of teachers to extra duties in addition to their full instructional responsibilities. In full recognition of the fact that certain extracurricular activities require additional time and attention beyond that which is normally expected of a teacher, the District has authorized extra pay for extra duties which exceed the professional obligation of a teacher. The amounts for extra pay for extra duties are listed in Appendix G. If the District considers adding a new position or changing any existing extra pay position, they shall negotiate an appropriate rate of pay for the position with the Association before implementation". The pay scale set forth in "Appendix G", which includes provisions for football coaches, sets the amounts of such extra pay as percentages of the base salary for teachers for the given year. I believe that these provisions raise questions as to the scope of the substantive provisions of the contract itself and are, therefore, matters of contract interpretation and application to be resolved by the arbitrator (*see, Matter of Franklin Cent. School*

*[Franklin Teachers Assn.]*, 51 NY2d 348; *Board of Educ. v Barni*, 49 NY2d 311; *Matter of Wyandanch Union Free School Dist. v Wyandanch Teachers Assn.*, 48 NY2d 669; *Matter of Board of Educ. v Plainedge Fedn. of Teachers*, 228 AD2d 589).

Finally, although the arbitrator would be barred from directing the reappointment of Mr. Gordon to a coaching position, an arbitrator has "broad power to fashion other relief, and a court, in deciding an application for a stay, should not prematurely assume that the only remedy to be granted is an impermissible one" (*Matter of Riverhead Cent. School Dist. v Riverhead Cent. Faculty Assn.*, 140 AD2d 526, 527).