[746 NYS2d 7]

In the Matter of UNITED FEDERATION OF TEACHERS, LOCAL 2, AFT, AFL-CIO, Respondent, v BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK, Appellant.

First Department, July 18, 2002

## APPEARANCES OF COUNSEL

*Lena Mukherjee* of counsel (*James R. Sandner,* attorney), for respondent.

*Scott Shorr* of counsel (*Barry P. Schwartz* on the brief; *Michael D. Hess* and *Michael A. Cardozo, Corporation Counsel* of New York City, attorneys), for appellant.

## OPINION OF THE COURT

FRIEDMAN, J.

This appeal involves a school principal's selection from among his school's qualified staff of six teachers to fill positions in an after-school instructional help program, which is known as "per session" employment. A teacher who unsuccessfully applied for a position in the program filed a grievance, which ultimately resulted in the rendering of an arbitration award directing that the grievant be given such a position. The question now presented is whether the selection the principal made, based on his professional judgment that the teachers selected were better qualified for the program than the grievant, may be invalidated in arbitration on the sole ground that it was not justified to the arbitrator's satisfaction. We hold that this award violates public policy by impermissibly infringing on the nondelegable responsibility of the public school system to

maintain educational standards. In addition, even if the award did not violate public policy, it exceeded the arbitrator's power under the collective bargaining agreement. Accordingly, we reverse the judgment of Supreme Court and vacate the award.

The subject after-school program, "Project Read," has the goal of bringing elementary school students up to grade-level reading ability by the end of third grade. The program was first implemented during the 1997-1998 school year. It is undisputed that the collective bargaining agreement (the Agreement) between petitioner United Federation of Teachers (UFT) and respondent Board of Education of the City School District of the City of New York (the Board) in force at the time did not set forth any specific requirements for the selection of Project Read teachers. In particular, the Agreement did not prescribe any procedures by which Project Read positions are to be filled, nor did the Agreement require that teachers with greater seniority be given any degree of preference in staffing the program.[1] UFT contends, however, and the arbitrator agreed, that the Agreement's general requirement that the Board not exercise its discretion in "a discriminatory or arbitrary or capricious manner" did apply to the making of selections for Project Read.

In September 1998, grievant Linda Feil, a third-grade teacher in a New York City public school (P.S. 173), applied for a per-session position in Project Read. The announcement of the opening set forth certain selection criteria, including a preference for teachers holding "Early Childhood/Reading License[s]." Feil noted in her application for the position that she had a "common branch" teaching license and 26 years of primary school teaching experience, and had worked as a substitute teacher in Project Read and the Summer Reading program. Feil did not, however, have an Early Childhood or Reading license.

In October 1998, Feil was informed by P.S. 173's principal that she had not been selected for Project Read. The six teachers who were selected for the program included two teachers who held Early Childhood or Reading licenses, both of whom had lesser seniority than Feil, and four teachers who, like Feil, held only "common branch" licenses, of whom two had greater seniority than Feil and two had lesser seniority.

---

1. In the arbitration, UFT argued that article 15 of the Agreement (captioned "Rates of Pay and Working Conditions of Per Session Teachers") did require that selections for Project Read be made, subject to certain exceptions, "according to seniority." The arbitrator rejected this argument, and UFT does not pursue it in this proceeding.

As subsequently paraphrased by the arbitrator, the principal of P.S. 173, who selected the teachers for Project Read, gave the following explanation of his decision not to select Feil:

"Principal Shulman stated that while Grievant is a satisfactory teacher with excellent teaching skills, his selection was based upon his judgment, notwithstanding seniority, that a greater level of specific teaching experience was evident from the applications of the selected teachers. This experience included the following: demonstration of unique skills working with at-risk early childhood pupils; participation in specialized training in staff development programs related to thematic planning, such as paired and shared Reading; greater degree of demonstrated success with children's literature; experience with differentiated instruction with high risk students; and, experience and demonstrated skills in conducting parent workshops relating to 'family literacy' for parents of high risk students."

It is undisputed that the six teachers the principal selected were qualified to participate in Project Read, as was Feil.

UFT, Feil's union, filed a grievance alleging that the decision not to select her for Project Read violated certain provisions of the Agreement. When the parties were unable to resolve the grievance, it was submitted to arbitration pursuant to the Agreement.

After holding hearings, the arbitrator, by an opinion and award dated August 9, 1999, determined that the Board, in breach of the Agreement, had "arbitrarily" denied Feil a Project Read position, and directed the Board to place Feil in a Project Read position with back pay. While the arbitrator recognized that the selection of teachers for Project Read was "not covered by the Agreement," she stated that "[t]he exercise of [managerial] discretion [in making such selections] is subject to the general arbitral rule that such an exercise must be undertaken in good faith and not be arbitrary, capricious or discriminatory in nature." The arbitrator explained her conclusion that the decision not to select Feil was arbitrary as follows:

"Th[e] evidence of [Feil's] qualification for the position [which was not disputed], as well as the fact that she worked as a substitute teacher in the program and that she taught at a lower grade level

closer to the target group of [Project] Read than two of the selectees, leads to the logical question of why she was considered to be inferior to the other candidates, given that the issue of holding a preferred license was obviously not controlling as it was not held by four of the six selectees. As noted above, this question was not addressed on record with any specificity to allow this Arbitrator to understand why the principal found the other selectees superior to Grievant.

"Therefore, the evidence of record demonstrates that the selection process was arbitrary in nature, and thus an abuse of discretion, as it was not 'governed' by the fact of whether a teacher held an Early Childhood or Reading License and involved more than a mere review of the information contained in the applications. Nor was there documentary evidence of the claimed superior qualifications of the selectees which would have provided a basis of support for these claims."

UFT commenced this CPLR article 75 proceeding to obtain a judgment confirming the award. The Board, which had given Feil a Project Read position but continued to oppose enforcement of the back-pay award, cross-moved to vacate the award. The IAS court granted the motion to confirm and denied the cross motion to vacate. We now reverse.

The starting point for our analysis is the principle that "[a]n arbitration award may not be vacated unless it violates a strong public policy, is irrational, or clearly exceeds a specifically enumerated limitation on the arbitrator's power" (*Matter of Board of Educ. v Arlington Teachers Assn.*, 78 NY2d 33, 37, citing CPLR 7511 [b] [1]). We find that the award in this case must be vacated, both as a matter of public policy and pursuant to a specifically enumerated limitation on the arbitrator's power under the terms of the parties' Agreement. We discuss first the public policy ground for our decision, and then turn to the applicable contractual limitation on the arbitrator's power.

It is well established that "it is beyond the power of a school board to surrender through collective bargaining a responsibility vested in the board in the interest of maintaining adequate standards in the classrooms * * *" (*Honeoye Falls-Lima Cent. School Dist. v Honeoye Falls-Lima Educ. Assn.*, 49 NY2d 732, 734, citing *Matter of Cohoes City School Dist. v Cohoes Teachers Assn.*, 40 NY2d 774, 778; *cf., Matter of Board of Educ. v*

*Arlington Teachers Assn.*, 78 NY2d at 37, *supra*). Thus, for example, the Court of Appeals has held that an arbitration award should be vacated as contrary to public policy if it interferes with a school's authority to grant or withhold tenure (*Matter of Cohoes City School Dist. v Cohoes Teachers Assn.*, *supra*; *see also, Matter of Aptekar v Board of Higher Educ.*, 66 AD2d 630, 632), or with a statutory mandate that layoffs be implemented in a manner that maintains teaching proficiency in different areas of instruction (*Honeoye Falls-Lima Cent. School Dist. v Honeoye Falls-Lima Educ. Assn.*, *supra*). While an arbitrator may render an award based on a school board's failure to adhere to contractually mandated "supplemental procedural steps preliminary to the board's final action" (*Matter of Cohoes City School Dist. v Cohoes Teachers Assn.*, *supra* at 778; *see also, Matter of Candor Cent. School Dist. [Candor Teachers Assn.]*, 42 NY2d 266, 272), the school board's ultimate determination on a matter bearing directly on the maintenance of educational standards generally remains immune from arbitral review.

Among a school board's prerogatives relating to the maintenance of educational standards in which arbitrators are forbidden to interfere is the determination of the qualifications necessary for a particular teaching assignment, and, as particularly relevant here, "decid[ing] which individual best fulfill[s] those qualifications" (*Matter of Three Vil. Teachers' Assn. v Three Vil. Cent. School Dist.*, 128 AD2d 626, 627 [*affg* 129 Misc 2d 920], *lv denied* 70 NY2d 608). In *Three Village*, the arbitration award was based on a finding that the district had breached its collective bargaining agreement in deciding to "continue[ ] [a substitute] in [a] kindergarten teaching position rather than recalling the most senior excessed elementary teacher in the middle of the term" (129 Misc 2d at 921). Although the district was not contractually required to fill the position on the basis of seniority, and the district justified its decision based on concern for continuity of the learning experience, the arbitrator held that this did not constitute a bona fide educational reason not to rehire a more senior teacher (*id.* at 922, 923). In affirming Special Term's judgment vacating the award, the Appellate Division wrote (128 AD2d at 627):

> "The school district's ultimate responsibility to determine the qualifications required and preferred for a particular teaching position (*see*, Education Law § 2573 [9]), and to determine whether a prospective applicant is possessed of those qualifica-

tions is a responsibility of the type that may not be bargained away, as it is central to the maintenance of adequate standards in the classroom [citing *Honeoye Falls-Lima Cent. School Dist. v Honeoye Falls-Lima Educ. Assn., supra*]. * * * Thus Special Term did not err in holding that the arbitrator had interfered with the school district's nondelegable responsibility to determine the requisite job qualifications and to decide which individual best fulfilled those qualifications."

Similarly, in *Matter of Riverhead Cent. School Dist. v Riverhead Cent. Faculty Assn.* (140 AD2d 526, *lv denied* 72 NY2d 810), the union sought to arbitrate a tenured physical education teacher's claim that the school district's decision not to reappoint him as varsity football coach was both procedurally and substantively in violation of the collective bargaining agreement. The Appellate Division allowed arbitration to proceed on the procedural claim, but affirmed the grant of a stay of arbitration as to the teacher's substantive claim. The Court explained: "Arbitration of the [district's] substantive decision to appoint a more qualified applicant would violate public policy by permitting the arbitrator to substitute his subjective determination of the applicant's qualifications for that of the [district]" (140 AD2d at 528; *see also, Matter of Board of Educ. v Port Jefferson Teachers' Assn.*, 243 AD2d 468, 470, *lv denied* 91 NY2d 814; *Matter of Meehan v Nassau Community Coll.*, 152 AD2d 313, *lv dismissed* 75 NY2d 1005; *Matter of South Country Cent. School Dist. [Paul]*, 103 AD2d 780, 781).

In this case, although the arbitrator couched her analysis of the case in procedural terms, stating as her conclusion that "the selection process was arbitrary in nature," she did not identify any contractual procedural rules that applied to the selection process, much less any procedural rules that had been violated. Rather, the arbitrator's criticisms were entirely directed at the substantive grounds on which the selection was made. The arbitrator was particularly troubled by the fact that the four selectees who lacked an Early Childhood or Reading license were chosen over Feil (who also lacked such a license) based in large measure on the principal's personal familiarity with the quality of the applicants' work. The arbitrator acknowledged that "the record shows that Principal Shulman was an active principal who visited the classrooms on a regular basis, * * * and, as noted in his testimony, * * * 'knows [the teachers] well, professionally.'" Nonetheless, the arbitrator

objected to the fact that the principal's assessment of the relative qualifications of the applicants "based on his 15 years of service as the chief school executive * * * was never fully explained on the record," i.e., was not explained to the arbitrator's satisfaction, and was not supported by "documentary evidence." Ultimately, the arbitrator concluded that she had not been provided with sufficient evidence "to allow [her] to understand why the principal found the other selectees superior to Grievant." Although the arbitrator did not expressly state that Feil was better qualified than any of the selectees, her award directing that Feil be given a Project Read assignment would seem to imply just such a finding. In sum and substance, the arbitrator substituted her own judgment for that of the school official whom the Board had authorized to make the decision. As a matter of public policy, this was beyond the arbitrator's power.

The foregoing is not meant to suggest that a collective bargaining agreement may not require that the most senior qualified teacher within the bargaining unit be given preference in filling an open position. Such seniority provisions are, of course, fully enforceable (*see, e.g., Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn.*, 45 NY2d 746, 747-748; *Matter of Meehan v Nassau Community Coll.*, 242 AD2d 155, 159, *lv dismissed* 92 NY2d 946). In the case before us, however, the parties' Agreement did not contain any seniority provision applicable to Project Read, as the arbitrator herself acknowledged. If a union wishes to obtain preference for more senior qualified teachers in filling a given position, it must bargain for such a provision in contract negotiations. An arbitrator does not have the power to write such a term into a collective bargaining agreement in the guise of a finding that the school system's selection of a qualified teacher with less seniority was arbitrary or capricious. To reiterate, while an agreed-upon seniority provision must be enforced, an arbitrator may not substitute her own judgment for that of the school principal as to the qualifications of the applicants for a position subject to the principal's discretionary appointment.

■ Even if public policy did not require us to vacate the award, we would be constrained to reach the same result on the ground that the arbitrator's award exceeded the power granted to her by the parties' Agreement. As here pertinent, article 22 (C) of the Agreement limits the arbitrator's powers as follows:

"ARTICLE 22—GRIEVANCE PROCEDURE

"C. Arbitration * * *

"The arbitrator shall limit his decision strictly to the application and interpretation of the provisions of this Agreement and he shall be without power or authority to make any decision:

"1. Contrary to, or inconsistent with, or modifying or varying in any way, the terms of this Agreement or of applicable law or rules or regulations having the force and effect of law.

"2. Involving Board discretion under the provisions of this Agreement, under Board by-laws, or under applicable law, except that the arbitrator may decide in a particular case whether the provision was disregarded or applied in a discriminatory or arbitrary or capricious manner so as to constitute an abuse of discretion, namely: whether the challenged judgment was based on facts which justifiably could lead to the conclusion as opposed to merely capricious or whimsical preferences or the absence of factual reasons.

"3. Limiting or interfering in any way with the powers, duties and responsibilities of the Board under its by-laws, applicable law, and rules and regulations having the force and effect of law."

The arbitrator invalidated the Board's discretionary determination not to select Feil for the Project Read program pursuant to her power under the above-quoted paragraph 2 of article 22 (C) to review exercises of the Board's discretion to determine whether the Board "disregarded [a provision of the Agreement] or applied [such provision] in a discriminatory or arbitrary or capricious manner so as to constitute an abuse of discretion * * *."[2] Thus, putting to one side any question of public policy, the question that emerges is whether there was any evidence

2. The Board argues that the arbitrator had no power under article 22 (C) to review the Board's procedures or exercise of discretion in selecting teachers for Project Read because, as the arbitrator herself recognized, the Agreement simply did not govern the making of selections for that program. The Board waived this argument, whatever its merit, by voluntarily submitting the matter to arbitration, without seeking a stay (*see, Rochester City School Dist. v Rochester Teachers Assn.*, 41 NY2d 578, 583). This waiver does not, however, preclude the Board from seeking to vacate the award ultimately rendered in the arbitration on the ground that, in light of the evidence that

before the arbitrator that would support her determination that, in the making of the determination not to select Feil for Project Read, as stated in paragraph 2 of article 22 (C) of the Agreement, "[a] provision [of the Agreement] was disregarded or applied in a discriminatory or arbitrary or capricious manner so as to constitute an abuse of discretion, namely: [that] the challenged judgment was based on * * * merely capricious or whimsical preferences or the absence of factual reasons." Where a school system's collective bargaining agreement limits the arbitrator's power to invalidate exercises of the school board's discretion to instances of such "abuse of discretion," an award based on the arbitrator's view that the board "had not offered a sufficiently compelling basis" for its decision exceeds the arbitrator's authority (*Matter of Three Vil. Teachers' Assn. v Three Vil. Cent. School Dist.*, 128 AD2d at 627, *supra* [internal quotation marks omitted]), and thus must be vacated on the ground that it "exceeds a specifically enumerated limitation on the arbitrator's power" (*Matter of Board of Educ. v Arlington Teachers Assn.*, 78 NY2d at 37, *supra*).

There is no support in the record for the view that the decision not to select Feil for Project Read constituted an "abuse of discretion" within the meaning of the above-quoted portion of article 22 (C). Rather, the arbitrator simply found the principal's stated reasons unpersuasive to her. The arbitrator acknowledged that the principal explained that he chose the four selectees who, like Feil, lacked an Early Childhood or Reading license based on his view that the selected teachers had demonstrated greater achievement than Feil in the areas of pedagogical expertise relevant to Project Read. That the principal's assessment was based largely on his general familiarity, as the applicants' supervisor, with the quality of their work, rather than solely on the information contained in their applications, or that his assessment was inherently somewhat subjective and not entirely reducible to "documentary evidence," did not render his selection the product of "merely capricious or whimsical preferences," as article 22 (C) of the Agreement would require to justify its being set aside by an arbitrator. Again, it is undisputed that each teacher selected was qualified for the program, and the Agreement sets forth no requirement that the basis for the selection be documented in any particular fashion. Moreover, as previously discussed, notwithstanding that the arbitrator purported to base her deci-

---

was actually presented in the arbitration, the award exceeds the arbitrator's power under the Agreement.

sion on defects in the "selection process," she did not identify any contractual procedural rules that had been violated. Indeed, in observing that the selection of teachers for Project Read was "not covered by the Agreement," the arbitrator effectively acknowledged that no contractual procedural rules applied to the selection process for this program.

That the principal's decision not to select Feil cannot be characterized as an abuse of discretion within the meaning of article 22 (C) is further demonstrated by the arbitrator's acknowledgment that the principal had considered the fact that the selectees, unlike Feil, had received "specialized training" relevant to Project Read. The arbitrator apparently believed, for reasons she did not explain, that the principal had given too much weight to this factor. We further observe that the award cannot be sustained on the ground that Feil's seniority was not given sufficient weight, since it is undisputed, as previously discussed, that there is no requirement in the Agreement that seniority be given weight in making selections for this program. Finally, the record is devoid of any evidence that Feil was not selected as the result of invidious discrimination, and the arbitrator made no finding that there had been any such discrimination in the making of the selections.

In closing, we note that the school at which Feil taught had more teachers qualified for Project Read than positions in the program to offer, and it was impossible to avoid disappointing at least one qualified applicant in making selections for the program. The selections were made by the individual who, as the school's principal for 15 years, was personally familiar with the quality of each applicant's work. Since nothing in the record supports the view that the principal's selection of six qualified applicants other than Feil was either "discriminatory or arbitrary or capricious," the arbitrator in effect substituted her choice among the qualified applicants for the choice made by the principal to whom the Board had delegated its authority. Both because this award impermissibly infringes on the Board's nondelegable responsibility for the maintenance of educational standards, and because the Agreement in any event did not authorize the arbitrator to render such an award, we must set the award aside.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Bruce Allen, J.), entered January 12, 2001, which granted petitioner's motion to confirm, and denied respondent's cross motion to vacate, an arbitration award, dated August 9, 1999, finding that the Board violated

the parties' collective bargaining agreement by arbitrarily denying grievant Linda Feil per-session employment as a teacher in the "Project Read" after-school program, should be reversed, on the law, without costs, the motion to confirm denied, and the cross motion to vacate granted.

NARDELLI, J.P., SAXE, SULLIVAN and WALLACH, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered January 12, 2001, reversed, on the law, without costs, the motion to confirm an arbitration award denied, and respondent's cross motion to vacate the award granted.