**John SPANG, Jr., Plaintiff,**

v.

**KATONAH–LEWISBORO UNION FREE SCHOOL DISTRICT, Robert Lichtenfeld, individually and in his official capacity as Superintendent of the Katonah–Lewisboro Union Free School District, and the Board of Education of the Katonah–Lewisboro Union Free School District, Defendants.**

No. 07 Civ. 2257 (SCR).

United States District Court, S.D. New York.

May 18, 2009.

Eugene Gerald Eisner, Jeanne E. Mirer, Eisner & Associates, P.C., New York, NY, for Plaintiff.

Lewis R. Silverman, John S. Diaconis, Lewis R. Silverman, Rutherford & Christie, LLP, New York, NY, for Defendants.

## OPINION AND ORDER

STEPHEN C. ROBINSON, District Judge:

John Spang, Jr. brought this suit under 42 U.S.C. § 1983 after he was fired from his position as the Assistant Superintendent for Business of the Katonah–Lewisboro Union Free School District on August 31, 2006. Spang seeks relief on seven counts: (1) denial of federally-protected liberty interests without due process; (2) fraudulent misrepresentation; (3) tortious interference with advantageous business relations; (4) tortious interference with pension rights; (5) self-defamation; (6) breach of contract; and (7) First Amendment retaliation. The defendants moved to dismiss four counts in Spang's First Amended Complaint, including both federal claims. The motion was fully briefed on July 27, 2007, and the Court heard oral argument on February 4, 2009. At the Court's request, the parties submitted simultaneous, post-hearing letter-briefs on February 10, 2009. For the reasons set forth in this Order, the defendants' motion is granted in part and denied in part.

### I. Factual Allegations

The following facts, as alleged in the First Amended Complaint, are offered in the light most favorable to the plaintiffs and are accepted as true for the purposes of deciding this motion. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir.2007).

Responding to an advertisement for the position of Assistant Superintendent for

Business, Spang interviewed with defendant Superintendent Robert Lichtenfeld, who strongly encouraged Spang to accept the position. Am. Compl. ¶¶ 9–11. During the interview, Lichtenfeld withheld several facts about the job, including that the State Comptroller was investigating allegations of financial wrongdoing against the School District, an investigation with which Spang was required to cooperate. *Id.* ¶ 12. Spang alleges that he would not have accepted the position had he been informed of the investigation. *Id.* ¶ 13. After another interview with the defendant School Board on December 23, 2004, Spang resigned as Assistant Director of Business in the Greenwich Connecticut Public School System. On Lichtenfeld's recommendation, Spang was hired by the School District on February 1, 2005 and held the position of Assistant Superintendent for Business until his termination on August 31, 2006. *Id.* ¶¶ 7, 12.

Spang learned about the Comptroller's investigation shortly after being hired. He fully cooperated with the Comptroller and defended the School District's position during the investigation. *Id.* ¶ 15. Spang complied with the terms of his contract, even though the School District had failed to provide a written job description for his position as purportedly required by the employment agreement. *Id.* ¶ 16. The Comptroller issued his report in early 2006, finding that several long-term employees had improperly used School District funds. *Id.* ¶ 17. Around this time, Spang discovered that a payroll clerk, Risa Ross, had falsified part of her application for employment in 1998. Spang did not recommend the immediate termination of Ms. Ross, and Lichtenfeld did not express any urgency to fire her. *Id.* ¶¶ 18–20.

On April 19, 2006, Lichtenfeld reviewed Spang's performance for the first time, and the review was mostly negative. *Id.* ¶ 22. Lichtenfeld's criticisms included: Spang's failure to exercise sufficient initiative on various projects; improper delegation of work to his assistants; failure to supervise the business office so as to overcome the interpersonal tensions; failure to timely provide a new overtime policy; failure to timely complete assignments (including addressing the outcome of the Comptroller's report); failure to properly communicate with the Superintendent; failure to act with urgency on several matters; Spang's confrontational and argumentative interactions with investigators from the Comptroller's office; and Spang's quick temper. *Id.* Spang denies each of these critiques and claims that Lichtenfeld either knew or should have known that the accusations were untrue. *Id.* ¶ 24. Spang responded to the evaluation in a written letter to Lichtenfeld on April 19, 2006, outlining Spang's accomplishments. *Id.* ¶ 26. Lichtenfeld notified Spang that he would recommend Spang's termination to the Board and provided Spang with a list of written reasons for the recommended dismissal. *Id.* ¶ 28, 30. Spang responded on July 24 by sending a letter to the Clerk of the School District rebutting the critiques of Spang's performance. *Id.* ¶ 31. Spang was never afforded an opportunity to appear before the Board prior to its decision to fire him on August 1, 2006. *Id.* ¶¶ 31, 32, 34.

Spang's termination was effective August 31, 2006. *Id.* ¶ 32. At the time of his firing, Spang was only twelve days short of the required two years of service necessary to vest his retirement pension with the New York State Teachers' Retirement System. *Id.* ¶ 8. During June, July, and August of that year, local newspapers published several stories about Spang's firing, in which the defendants refused to comment publicly on the reasons for Spang's dismissal, citing privacy of personnel matters. *Id.* ¶¶ 34–37. Since his release, Spang has not been able to secure alterna-

tive employment, in part due to the negative performance evaluation in his personnel file and the publicity surrounding his firing by the School District. *Id.* ¶¶ 38, 46. After Spang notified the defendants of his intent to file this lawsuit, the defendants published on the Board's website the Comptroller's Report and the District's response, which Spang alleges defamed him in two ways. First, the Report comments that Spang refused to be fingerprinted a second time after his original prints were smudged, but notes that this lapse is mitigated by the fact that Spang does not work with children at the school. Spang alleges that this implies that he is either a criminal or a child molester. Second, the Report notes that Spang improperly approved several stipends that had not been authorized by the Board. *Id.* ¶ 47.

Spang subsequently filed this lawsuit on March 16, 2007.

## II. Standard of Review on a Motion to Dismiss

In evaluating a motion to dismiss, a court must "view all allegations raised in the complaint in the light most favorable to the non-moving party ... and 'must accept as true all factual allegations in the complaint.'" *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.,* 102 F.3d 660, 662 (2d Cir.1996) (quoting *Leatherman v. Tarrant County Narcotics Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)) (citation omitted). The Court is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985). Because the complaint must al-

lege facts that confer a cognizable right of action, "'[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *York v. Association of the Bar of City of New York,* 286 F.3d 122, 125 (2d Cir.2002) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

## III. Analysis

The defendants moved to dismiss four counts from the First Amended Complaint. Each claim is considered individually below.

### A. "Stigma–Plus"

Spang claims to have been deprived of his good name, reputation, honor, and integrity by government actors without due process in violation of the Fourteenth Amendment.[1] A "person's interest in his or her good reputation alone, apart from a more tangible interest, is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause or create a cause of action under § 1983." *Patterson v. City of Utica,* 370 F.3d 322, 329–30 (2d Cir.2004) (citing *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)); *see also Sadallah v. City of Utica,* 383 F.3d 34, 38 (2d Cir.2004) ("Defamation, however, is an issue of state law, not of federal constitutional law, and therefore provides an insufficient basis to maintain a § 1983 action."); *Valmonte v. Bane,* 18 F.3d 992, 999 (2d Cir.1994) ("[D]amage to one's reputation is not 'by itself sufficient to invoke the procedural protection of the Due Process Clause.'" (quoting *Paul v. Davis,* 424 U.S. at 701, 96 S.Ct. 1155)). When the

---

1. As a probationary employee, Spang has no property interest protected by the Fourteenth Amendment. *Segal v. City of New York,* 459 F.3d 207, 212 (2d Cir.2006) (citing *Board of Regents of State Colls. v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). Consequently, his claim is styled as a deprivation of a liberty interest without adequate process of law.

government's defamation is coupled with the loss of a non-reputational liberty or property interest without due process of law, however, it may be actionable under the Fourteenth Amendment. This action is commonly referred to as "stigma-plus."

■■ Spang claims that when the defendants published the reasons for his termination (the "stigma") around the time he was fired from government employment (the "plus") without adequate process, they violated his liberty interest secured by the Fourteenth Amendment. *See Velez v. Levy,* 401 F.3d 75, 87–88 (2d Cir.2005). To state a valid stigma-plus claim, Spang must establish three facts: (I) the government made stigmatizing statements about him, statements that call into question his good name, reputation, honor, or integrity; (2) the stigmatizing statements were made public; and (3) the stigmatizing statements were made concurrently with, or in close temporal proximity to, his dismissal from government employment. *Segal v. City of New York,* 459 F.3d 207, 212 (2d Cir.2006); *Patterson,* 370 F.3d at 330. If these facts are shown, the plaintiff must have been afforded an adequate post-deprivation hearing that gave him an opportunity to clear his name, and he may seek damages for the defendants' failure to have done so.

The publication and proximity prongs are satisfied here. When the school placed the negative performance evaluation in Spang's personnel file, publication was complete. *Segal,* 459 F.3d at 213 ("We have previously held that the placement of statements in an employee's personnel file may satisfy the contemporaneous public disclosure elements of a stigma-plus claim." (citing *Brandt v. Board of Coop. Educ. Servs.,* 820 F.2d 41, 45 (2d Cir. 1987))). Moreover, the defendants do not challenge that the negative evaluation was placed in Spang's personnel file "concurrently with, or in close temporal proximity to, his dismissal from government employment." *Id.* at 212.

■■ Therefore, the dispute centers on whether the negative performance review was "stigmatizing." The defendants argue that Spang's negative performance evaluation (and the reasons listed for his firing) concerned his "specific performance of the duties of Assistant Superintendent for Business and did not denigrate his competence or impugn his reputation as a professional...." Mem. at 8.[2] Statements that "denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession" will satisfy the stigma requirement. *Donato v. Plainview–Old Bethpage Cent. Sch. Dist.,* 96 F.3d 623, 630–31 (2d Cir.1996); *accord Segal,* 459 F.3d at 212. When the stigma theory is based on denigration of the employee's professional competence, the plaintiff must also show foreclosure of future business opportunities. Finally, a plaintiff is generally required to raise the falsity of these stigmatizing statements only as an issue, not prove they are false. *Patterson,* 370 F.3d at 330.

The case law of this Circuit bares that valid liberty claims typically have stigmatizing statements much more onerous than are present here. *See Segal,* 459 F.3d at 209–10 (kindergarten teacher permitted student-on-student violence in the classroom); *Patterson,* 370 F.3d at 331–32 (public official accused of dealing drugs, taking kickbacks, and stealing from the city); *id.* at 334 (campaign by public officials to use plaintiff as a scapegoat for

---

**2.** Memorandum of Law in Support of Defendants' Motion to Dismiss ("Mem."), June 18, 2007.

municipal malfeasance); *Brandt,* 820 F.2d at 45 (charges of sexual misconduct); *Quinn v. Syracuse Model Neigh. Corp.,* 613 F.2d 438, 446 (2d Cir.1980) (official accused of criminal responsibility for missing government funds); *Lombard v. Board of Educ. of City of New York,* 502 F.2d 631 (2d Cir.1974) (charge of mental illness), *overruled on other grounds by Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Russell v. Hodges,* 470 F.2d 212, 217 (2d Cir.1972) (illustrious bases for a stigma-plus claim include "charges of chronic alcoholism or association with subversive organizations"); *Behrend v. Klein,* Nos. 04 Civ. 5413, 04 Civ. 5414, 2006 WL 2729257, at *8 (E.D.N.Y. Sept. 25, 2006) (teacher's name placed on an "Ineligibility List" that prevented further employment with the school system).

However, the Court of Appeals for the Second Circuit allowed a stigma-plus claim to proceed in *Donato v. Plainview–Old Bethpage Central School District,* 96 F.3d 623 (2d Cir.1996), a case with factual allegations on all-fours with Spang's Amended Complaint. In *Donato,* an assistant principal was fired, and a negative performance evaluation was placed in her personnel file. The evaluation noted Donato's "(1) failure to perform the master scheduling responsibilities; (2) failure to effectively manage discipline at the seventh and eight grade levels; (3) poor secondary staff relations; (4) ineffective parent interaction[;] (5) failure to provide adequate instructional supervision; (6) failure to complete administrative responsibilities, such as cafeteria supervision and attendance at meetings; (7) failure to consult with supervisor regarding summer work schedule; (8) inability to accept constructive criticism; and (9) ineffective commitment to the Middle School." 96 F.3d at 627. Like Spang, Donato alleged that this performance review was false and filled with intentional fabrications, *id.* at 628, and the Court of Appeals found these statements to be stigmatizing, *id.* at 632 ("[S]tigmatizing allegations also include charges going to professional competence when the charges are sufficiently serious.").

Following *Donato* as controlling precedent, the Court concludes that Spang has adequately pled a stigma-plus claim. As alleged in the Amended Complaint, the defendants' denigration of Spang's professional competence has foreclosed future business opportunities for Spang. Am. Compl. ¶ 46 ("The termination and publicity surrounding plaintiff's termination has impugned his reputation and has resulted in stigmatizing him such that he has not been able to continue his profession. Since his termination, Spang has applied to many school districts ... [but] [h]e is now a proverbial 'hot potato' [*sic*] and no school district will hire him."). Consequently, Spang was entitled to "a limited but important right: the right to be heard 'at a meaningful time and in a meaningful manner.'" *Segal,* 459 F.3d at 213 (quoting *Goldberg v. Kelly,* 397 U.S. 254, 267, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)).

■ It is undisputed, however, that Spang did not pursue an Article 78 proceeding—to which he was entitled under New York law—in order to clear him name. The Court raised its concern about this fact at the close of oral argument, and at the Court's request, the parties submitted supplemental letter-briefs on the limited question of whether the availability of an Article 78 proceeding was sufficient process to defeat Spang's stigma-plus claim.

Spang argues that the availability of an Article 78 proceeding was not adequate process because he did not suffer a "random and unauthorized deprivation" of his liberty interest. Spang directs the Court to *DiBlasio v. Novello,* 344 F.3d 292 (2d Cir.2003), and *Velez v. Levy,* 401 F.3d 75

(2d Cir.2005), for the proposition that a post-deprivation hearing is insufficient to remedy a stigma-plus claim when the injury was caused by a "high ranking" official with "final authority over significant matters," like Superintendent Lichtenfeld. *See DiBlasio*, 344 F.3d at 302. Spang now claims that he was entitled to a *pre*-deprivation hearing to clear his name.[3]

Doctrine in this Circuit has oscillated between requiring post-deprivation and pre-deprivation hearings in stigma-plus cases. In *Patterson*, the Second Circuit strongly suggested that, in the case of an at-will government employee, a post-deprivation name-clearing hearing was sufficient to protect the liberty interest implicated in a stigma-plus claim. 370 F.3d at 335 ("A post-deprivation name-clearing hearing may defeat a plaintiff's stigma-plus claim, so long as the hearing is adequate for due process purposes."). Later, in *DiBlasio* and *Velez*, the court indicated that a pre-deprivation hearing was due when the stigma-plus injury was executed by a high-ranking official. *DiBlasio*, 344 F.3d at 302–04; *Velez*, 401 F.3d at 90–93. In *Velez*, the court took pains to note that *Donato* was entirely consistent with *DiBlasio* because, the court reasoned, *Donato* held "implicitly" that the plaintiff "had originally been entitled to a pre-deprivation hearing." 401 F.3d at 92 n. 16. A year later, the Circuit returned with *Segal v. City of New York*. The court acknowledged the doctrinal ambiguity, and resolved, "We now hold that, in this case involving an at-will government employee, the availability of an adequate, reasonably prompt, post-termination name-clearing hearing is sufficient to defeat a stigma-plus claim...." 459 F.3d at 214. The court

went on to analyze the post-deprivation hearing afforded to the plaintiff under the familiar balancing test articulated in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

Presently, *Segal* is the last word in the debate, and the Court is inclined—indeed, required—to follow its logic and mandate, as other lower courts have done. *See, e.g., Cates v. Williams*, No. 08 Civ. 1529, 2009 WL 723021, at *7 (S.D.N.Y. Mar. 19, 2009); *Walsh v. Suffolk County Police Dept.*, No. 06 Civ. 2237, 2008 WL 1991118, at *14 (S.D.N.Y. May 5, 2008) ("[D]ue process does not require a *pre*-termination name-clearing hearing with respect to at-will employees."). In this context, courts have consistently held that Article 78 proceedings provide sufficient procedural protection as post-deprivation name-clearing hearings. *See, e.g., Cooper v. Metropolitan Transp. Auth.*, 04 Civ. 525, 2008 WL 4449470, at *6 (S.D.N.Y. Sept. 29, 2008) (dismissing a stigma-plus claim "because adequate post-deprivation remedies [through an Article 78 proceeding] were available and Plaintiff failed to take advantage of them"); *Rivera v. Community Sch. Dist. Nine*, 145 F.Supp.2d 302, 308 (S.D.N.Y.2001) ("New York's Article 78 proceeding has been held to be an adequate post-deprivation remedy."). The Court concludes that Spang's claim for deprivation of a liberty interest without due process must fail because adequate post-deprivation remedies were available, and Spang failed to avail himself of them. Therefore, the defendants' motion to dismiss the Due Process claim is granted.

**B. First Amendment Retaliation**

■ Spang claims that the defendants published false and defamatory statements

---

**3.** The Court is troubled by Spang's argument now seeking a *pre*-deprivation hearing—a request made for the first time in his supplemental brief. In his submissions and at oral argument, Spang did not argue for a pre-

deprivation hearing, but rather sought a post-deprivation name-clearing hearing. Nevertheless, the Court shall address the merits of Spang's new argument.

about him in retaliation for his expressed intent to litigate the circumstances of his dismissal. To sustain this claim, Spang must establish three facts: (1) his speech was constitutionally protected; (2) he suffered an adverse action at the hands of the defendants; and (3) a causal connection exists between the speech and the adverse action so that it can be said that the speech was a motivating factor in the determination. *Scott v. Coughlin,* 344 F.3d 282, 287 (2d Cir.2003); *Curley v. Village of Suffern,* 268 F.3d 65, 73 (2d Cir.2001). The defendants concede, as they must, that Spang's speech (*i.e.,* his intent to file a lawsuit) was constitutionally protected.

Spang alleges two adverse actions constituting retaliation. First, the School District posted on its website the Auditor's Comments and District Responses (the "Audit Report") generated by the Comptroller's office. The Auditor noted:

> During the course of our audit we noted that for one such employee (the former Assistant Superintendent for Business) included in our payroll test his [*sic*] fingerprints had been rejected due to smudging and therefore could not be read. The payroll office notified this employee of this fact and requested that he resubmit his fingerprints for testing. There was no indication that the fingerprints of this employee had been resubmitted. While this employee did not have direct student involvement since he was an administrative employee at the District office, we suggest that when any fingerprints are rejected that the employee in question be strongly requested to have his/her fingerprints re-taken as soon as possible.

Mem., Def. Exh. F, p. 6. In response to this Audit Comment, the District replied, "The District is displeased that the former Assistant Superintendent for Business chose not to comply with the request to resubmit his smudged fingerprints." *Id.*

Spang contends that the implication of this colloquy was that Spang either has a criminal record or that he is a child molester. As a second adverse action, Spang alleges that the defendants caused to be published in the *Lewisboro Ledger* on November 29, 2006, that Spang had approved stipends that had not been authorized by the Board. *See* Mem., Def. Exh. G. The defendants argue that this statement was made in the context of management letters to inform the residents of the District about the school's current financial situation.

An alleged adverse action must be such as would deter a similarly-situated individual of ordinary firmness from exercising his constitutional rights. *Dillon v. Morano,* 497 F.3d 247, 254 (2d Cir.2007). At this stage of the litigation, all reasonable inferences must be drawn in the plaintiff's favor, and—although the question is a close one—the Court concludes that a reasonable juror *could* find that the website posting and the news article were sufficient to deter an ordinary person from exercising his First Amendment rights. While the Court does not draw an inference from the Audit Report that Spang might be a child molester, it is plausible to conclude that Spang posed some danger to the school community due to his unwillingness to be re-fingerprinted. The alleged retaliatory statements in the Amended Complaint are assumed to be demonstrably false, and Spang is permitted a chance to substantiate his allegations through discovery.

Finally, the defendants rightly argue that even if Spang can demonstrate an improper motive in releasing the injurious statements, the defendants can defeat a retaliation claim by showing that they would have taken the same action absent the improper motive. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471

(1977); *accord Scott,* 344 F.3d at 287–88. The School District contends that it would have released the Audit Report as a duty to keep the District's citizens appraised of the audit results, regardless of any consideration of Spang or his lawsuit. While this may be true, it is not an allegation in the Amended Complaint and, therefore, not an appropriate consideration on this motion to dismiss. This question of fact is more appropriate for summary judgment. *See Scott,* 344 F.3d at 287–88 ("Regardless of the presence of retaliatory motive, however, a defendant may be entitled to *summary judgment* if he can show dual motivation, *i.e.,* that even without the improper motivation the alleged retaliatory action would have occurred.") (emphasis supplied).

### C. Qualified Immunity

In the alternative, Lichtenfeld argues that he is entitled to qualified immunity on the retaliation charge. Government defendants sued in their individual capacity are shielded by qualified immunity as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). A right is clearly established if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *see also Anderson v. Recore,* 317 F.3d 194, 197 (2d Cir.2003) ("A right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) 'a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful.'" (quoting *Young v. County of Fulton,* 160 F.3d 899, 903 (2d Cir.1998))); *accord Velez,* 401 F.3d at 100. Ultimately, "[t]he question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct." *McCullough v. Wyandanch Union Free Sch. Dist.,* 187 F.3d 272, 278 (2d Cir.1999). Qualified immunity protects all officials except those who knowingly violate the Constitution or those who are plainly incompetent. *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

Lichtenfeld contends that he is entitled to qualified immunity because his actions were objectively reasonable under the circumstances. Accepting the facts in the light most favorable to Spang, however, Lichtenfeld's actions do not warrant immunity. In response to Spang's intention to file this lawsuit—an exercise of constitutionally-protected speech—Lichtenfeld caused to be published demonstrably false statements about Spang that could be used to tarnish his reputation and cast aspersions on his character for the purpose of dissuading Spang from filing his lawsuit. It is well settled in this Circuit that such retaliatory actions by government officials violate the First Amendment. Lichtenfeld's motion to dismiss Spang's retaliation claim on qualified immunity is therefore denied.

### D. Tortious Interference with Advantageous Business Relations

In addition to his federal claims, Spang also asserts several causes of action under New York State law. Among these, Spang alleges that Lichtenfeld interfered with his business relationship with the School District by writing a negative performance review and recommending his termination. Under New York law, a colorable claim for tortious interference requires a showing that a valid contract exists and that a third party,

with knowledge of that contract, intentionally and improperly procured its breach, causing damage.[4] *TVT Records v. The Island Def Jam Music Group,* 412 F.3d 82, 88 (2d Cir.2005); *Joan Hansen & Co., Inc. v. Everlast World's Boxing Headquarters Corp.,* 296 A.D.2d 103, 111, 744 N.Y.S.2d 384 (N.Y.App.Div.2002). An "important qualification" on liability, however, is that "[one] asserting a tortious interference claim must also show that the defendant was not a party to the contact with which [it] allegedly interfered." *TVT Records,* 412 F.3d at 88 (citing *Finley v. Giacobbe,* 79 F.3d 1285, 1295 (2d Cir.1996)). Lichtenfeld argues that as the Superintendent of the Katonah–Lewisboro School District, he represents the School District and is not, as a matter of law, a "third party" to the contract between Spang and the Board of Education of the Katonah–Lewisboro Union Free School District. The Court agrees.

Spang's argument that Lichtenfeld was not an explicit party to his contract with the School Board conflicts with allegations in his own Amended Complaint. The Amended Complaint alleges that Lichtenfeld was responsible for interviewing and hiring Spang to join the School District. Spang also complains that Lichtenfeld failed to perform certain contractual requirements, including that "Lichtenfeld never established a job description by which Spang's performance was to be evaluated, thereby breaching [paragraph 10] of the contract." Am. Compl. ¶ 72. Spang further alleges that Lichtenfeld "breached paragraph 10 [of the parties' contract] when he wrote the negative [performance] evaluation...." *Id.* ¶ 73. Based on these allegations and others, Spang concludes that "Lichtenfeld and the Board of Education breached [paragraph] 10 of Spang's contract of employment." *Id.* ¶ 75. Although pled as alternative theories of liability, these allegations in the Amended Complaint may be considered to determine the relationship of the parties and whether Spang will be able to prove the necessary elements of each claim for relief—including tortious interference.

Moreover, Spang's argument ignores basic tenets of agency law. *Cf. Board of Educ. of Arlington Cent. Sch. Dist. v. Arlington Teachers Ass'n,* 78 N.Y.2d 33, 38, 571 N.Y.S.2d 425, 574 N.E.2d 1031 (N.Y. 1991) ("The superintendent of schools is the bargaining agent for a school district."); *Gallagher v. Gallagher,* 130 F.Supp.2d 359, 363 (N.D.N.Y.2001) (recognizing the "superintendent of a school district[ ] as an agent of the district"); *Black-*

---

4. While not clearly demarcated in the Amended Complaint, the Court construes this claim as tortious interference with contractual relations, given Spang's obvious contractual relationship with the School District and his allegations of contractual breach. As the New York Court of Appeals explained in *NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.,* 87 N.Y.2d 614, 621, 641 N.Y.S.2d 581, 664 N.E.2d 492 (N.Y.1996):

> [T]he degree of protection available to a plaintiff for a competitor's tortious interference with contract is defined by the nature of the plaintiff's enforceable legal rights. Thus, where there is an existing, enforceable contract and a defendant's deliberate interference results in a breach of that contract, a plaintiff may recover damages for tortious interference with contractual relations even if the defendant was engaged in lawful behavior. Where there has been no breach of an existing contract, but only interference with prospective contract rights, however, plaintiff must show more culpable conduct on the part of the defendant.

87 N.Y.2d at 621, 641 N.Y.S.2d 581, 664 N.E.2d 492 (citations omitted). The distinction that Spang attempts to draw between tortious interference with contractual relations and tortious interference with business relations, *see* Opp. at 19 n. 4, is immaterial to the salient question of whether Lichtenfeld should be considered a party to the business contract/relationship.

*welder v. Safnauer,* 689 F.Supp. 106, 122 (N.D.N.Y.1988) ("[T]he superintendent of schools in each district commonly acts as agent for the boards...."). There is no question that Lichtenfeld was acting in his official capacity and on behalf of the School District when he hired Spang, reviewed Spang's work, and recommended Spang's termination to the Board. Therefore, Lichtenfeld's actions are attributable to the School Board and the School District, and Lichtenfeld cannot be considered a third-party interloper to Spang's employment agreement. Considering these factors, the Court concludes that Spang has not alleged that Lichtenfeld was an extraneous party to Spang's employment contract with the School Board, and Spang's claim for tortious interference is dismissed.

### E. Breach of Contract

 Finally, the defendants move to dismiss Spang's contract claim. Spang alleges that the defendants breached his employment contract by failing to provide him with a written job description and by issuing a negative evaluation not reasonably related to his position description. In response, the defendants contend that even under the facts alleged in the Amended Complaint, Spang has not pled that the defendants failed to perform under the contract.[5]

In resolving this issue, the Court has reviewed and considered the parties' contract, attached to the defendants' motion to dismiss as Exhibit B. *See McCarthy,* 482 F.3d at 191; *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991) ("Relying on Rule 10(c), we have held that the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.")

(citing *Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir.1989)); *Goldman v. Belden,* 754 F.2d 1059, 1065–66 (2d Cir.1985)). Paragraph 10—the source of the parties' disagreement—reads in part:

> The Superintendent shall evaluate and assess, in writing, the performance of the Assistant Superintendent for Business at least once per year. The evaluation and assessment shall be reasonably related to the position description of Assistant Superintendent for Business of Schools for Business [*sic*] and the goals and objectives of the District in the year in question.

"Assistant Superintendent For Business Contract," dated Jan. 26, 2005 (Def. Exh. B) ¶ 10(A).

Even considering all allegations in the light most favorable to the plaintiff, most of Lichtenfeld's critiques contained in the performance evaluation were reasonably related to Spang's job performance. Specifically, Lichtenfeld noted Spang's failure to exercise sufficient initiative on various projects; his improper delegation of work to his assistants; his failure to supervise the business office so as to overcome the interpersonal tensions; his failure to timely provide a new overtime policy; his failure to timely complete assignments; his failure to properly communicate with the Superintendent; and his failure to act with urgency on several matters. Am. Compl. ¶ 22. However, the evaluation also noted Spang's confrontational and argumentative interactions with investigators from the Comptroller's office and his "quick temper." *Id.* While these critiques could arguably be reasonably related to Spang's job description, the factual record developed through discovery could bear a differ-

---

5. Despite the defendants' contention otherwise, Spang properly alleged that he complied with his obligations under the contract. Am. Compl. ¶ 16 ("Spang performed all other duties given him in a professional manner.... Spang completed the taks of the job assigned to him and addressed other issues as they came up.").

ent conclusion. Therefore, Spang must be afforded an opportunity through discovery to substantiate his allegations. Similarly, the materiality of defendants' alleged failure to provide Spang with a written description of his job responsibilities and the fact that Spang was not evaluated yearly is an issue better left for resolution at a later stage. Consequently, the defendants' motion to dismiss the breach of contract claim is denied.

### IV. Conclusion

For the reasons set forth in this Opinion and Order, the defendants' motion to dismiss the Amended Complaint is granted in part and denied in part. Specifically, Spang's Fourteenth Amendment claim and his tortious interference claim are dismissed under Rule 12(b)(6). The remainder of the defendants' motion to dismiss is denied. The Clerk of the Court is directed to close docket entry 4.

*It is so ordered.*